Good morning, your honors, and may it please the court. On behalf of Dyno Nobel, we ask that the judgment in this case be reversed on multiple grounds, the first being that the court erred in denying judgment as a matter of law on the issue of duty, which in turn turned on foreseeability. This court, and certainly one of the panel members in particular, is familiar with the prior decision of this court in what we call Scott 1, and there's really three aspects of Scott 1 that are critical to this first argument we make. The first being that the argument was advanced in Scott 1 that the defined inquiry for foreseeability and therefore duty turned on the fact that we were emitting NOx or making a chemical where, if people were exposed to it, it could be danger. And the court in Scott 1, I think, rejected that broader proposition and defined the foreseeability inquiry to be, was it foreseeable at the time in question that Mr. Scott, at a calumet plant 108 feet below the stack, that someone in that situation was actually in the orbit of danger? The second thing Where in the opinion did we reject anything? I was saying that I think that you defined the inquiry because at the beginning of Section 2 in the second full paragraph, it says the summary judgment record has evidence that Dyno had actual knowledge of probability of injury because of the nature of it being unconverted NOx gas where people would inhale it. And then the panel goes on to say, but risk is not foreseeable if it's outside the orbit of danger. And so what I think is being said there is it can't be enough just that NOx is dangerous. It has to be, obviously, if that were the case, there would be strict liability. Well, that's foreseeability. Pardon? That's foreseeability. I think it, I don't think it is because then you would have strict liability on that element for every chemical plant and every plant in the nation that makes something. But there's a distinction between duty and foreseeability. Foreseeability is a component, if you will, first of duty and then more typically of proximate cause. Well, I think that those are different Now are we talking about foreseeability? I thought you were starting with duty. I am starting with duty, but in many respects duty Was there a, where in the trial record prior to the ruling on judgment as a matter of law does the district court rule on duty? The district, I don't believe that the district court made a finding of duty as a matter of law in this case. And in fact, in her judgment on the jury verdict You don't find duty unless it's for the jury. Pardon? You don't find questions of law. Lawyers talk about us making findings all the time. We don't do findings. Understood. So where is the conclusion? Where is the definition of the duty prior to the JML ruling? The district court did not make a finding, a conclusion that a duty existed prior to the judgment as a matter of law finding. He denied the motion for judgment as a matter of law, which raised the question, then submitted a special interrogatory, which we objected to that procedure and then entered judgment without ever concluding as the district court that there was a duty in this case. And that was the sole basis. I have not been able to go through the record with the detail required. I assume there was quite a, quite a, an instructions conference in this case. There were two, one off the record and one on the record. Could you just give me this morning, the transcript site pages? Sure. The instruction conference on this particular issue is volume 10A, essentially the first eight pages of it. And that's where the objections are made. And then the judge reacts to them and made the decision to submit instruction 17, which is the one that we primarily object to. Well, but 16 is part of the issue. 16 is the general negligence definitional instructions. 16 incorporates the standard of care. Your brief argues it was ignored or disregarded. 16 defines the term negligent consistent with MAI, Missouri Approved Instructions. It explicitly states negligence means the failure to use ordinary care. That's correct. Okay. That's adopting a standard of care, isn't it? No, no. The way that it works is that the failure to use ordinary care is proved by proving the standard of care through independent evidence. Where in Lopez does it say that? Or any case? I believe that when you talk about what ordinary care is, in a case where it involves expert testimony or otherwise, in every single case you say, the way it's presented to the jury is, did the person do X, these acts? Secondly, were you thereby negligent? Negligent is the failure to use ordinary care. And in a case that involves a complicated manufacturing plan, I think the cases are legion that expert testimony has to define what ordinary care under those circumstances is. And then that's what you use to decide whether or not there's been a breach. Give me your best case for that proposition. I would say, well, I don't know that this is briefed in this particular case, but I do believe that... You argue standard of care all over your brief. I argue standard of care, that it was not defined for certain. And argue that you have to have evidence of what the standard of care is. I mean, Lopez says... Lopez reversed because they had an aggravated circumstances standard of care. And they said the default standard of care is ordinary care. Reverse. I think that... Well, the district court instructed on the default standard of care. I think that our objection is how he defined the standard of care, as opposed to providing the general negligence definition with the district... Yeah, and then I'm saying, give me your cases. It's, I mean, his JML or new trial rulings address this. I think that what Lopez is saying is that this can get to a submissible case on foreseeability, which they conclude is prospective, which is different than looking at foreseeability issues retrospectively, which is proximate causation. That's not what we're talking about. I'm trying to get my hands around your standard of care argument, which is kind of permeates your brief. Our standard of care argument is that what had to happen in this case is, well, first off, it was error to say breach the duty of care in these ways. And then they define the standard of care using a disjunctive approach, using five different ways. And our argument is that those are deficient, because those are not sufficient to establish a standard of care. Those weren't standard. Those were breach instructions. Maybe they were... In the applicable brief, see, doesn't it? I mean, maybe I'm just not figuring this out, but it seems to me that the judge implicitly made a duty of care conclusion. And he found that a reasonable and prudent person would have anticipate the danger and the potential for damage that under those circumstances that would breach the duty of ordinary care. Then he went on to define in 16, ordinary care negligence, right? Right. And then he then went on to say that if you find any of these breaches of that duty, then damages could lie, right? Isn't that how he instructed the jury? I think that what he did a little bit differently than what you're describing is in the instruction, he gave a very unusual instruction in Missouri when he put in there that defendant breached its duty of care by setting forth these acts. And that's an error, because that's assuming that there was, in fact, a duty in telling the jury that. But what you have to do under the cases that we do cite, you have to define the act that can give rise to negligence. And our point on appeal is that those are so vague and general and not tied to causation that those were deficient. And that would result in a new trial as opposed to a judgment as a matter of law. But because when you look at instruction 17, what he is submitting there are very general standards, such as the idea that you failed to follow your procedures. Well, I think that under Missouri law that that's deficient because it does, as the objection said in the instruction conference, give them a roving commission. It has to define what the act that gives rise to liability and causation is with some degree of specificity. And that that didn't do that. And we cite the McNeil. Are you reading from a case or just your argument? No, I'm naming McNeil would be a case, which is the one that we cite. It's 372 Southwest 3rd at 909. The verdict directing instruction, which 17 is, must instruct the jurors regarding the specific conduct that renders the defendant liable can't be abstract and it can't be general. And it has to tie to causation of the injuries. Because, and we cite Sopp and we cite Pringle also for the proposition that when you do these disjunctive ones, every single one of those has to show that if we, that those instructions are tied to the causation of the injury as well. That every one of those has to not be general, not be a roving commission. And we cite Howard, which is from this court applying Missouri law, saying that under the instructions, the evidence must bring the causal connection beyond the nebulous twilight of speculation, conjecture and surmise. And so by giving, just saying policies or weather, there's just, that's just too general to be an appropriate instruction under Missouri law. And also that if you go through the A, B, C, D, E, the five that they, they have there, those are so broad and general and not tied to causation that they gave the jury what Missouri recognizes in McNeil, essentially a roving commission, which is the proposition that it fails to advise the jury what acts or omissions of the parties, if any, found by it from the evidence, would constitute liability. Well, can I ask you a question? Because I'm, like, not intimately familiar with the instructional process under Missouri's instruction scheme. But if I look at this, and in the places where I ordinarily tried cases, both as a judge and a lawyer, in, say, Minnesota and North Dakota, you would have started off with a summary of claims and defenses as the very, you know, first substantive instruction once you get past the boilerplate. And it would not be unusual to say, the plaintiff claims that the defendant breached its duty of care, and then list exactly what's been listed in 17, right? And then you'd say, the defendant claims that it did not breach the blah, blah, blah, and you'd summarize whatever the defendant's claims were. But then when you got to the jury instruction that's the verdict director, you would just say, the defendant breached its duty of care. Leave it silent after that, and just say, you know, here's the claim, here's the defenses, here's what the experts say. At the end, you decide jurors. Would that be consistent with what ordinarily happens under Missouri law? No, and I've tried many of these cases and done many of the instruction conference. The introductory instruction, even under the Eighth Circuit civil patterns, is simply, they contend that they were hurt by this. It's very vague in general. Missouri places a true premium on the verdict directing instructions, and they have them for each count. And they have a lot of rules about verdict directing instructions. And that that is the instruction that really super matters. Because it has to set forth every fact that has to be found for liability, and not assume any disputed fact. And so that's the one we argue off of. That's the one that you look at to see whether they made a submissible case. It sets out every contested element necessary. And so under Missouri law, you would require an instruction on the duty of care that specifically sets out what the judge has found the duty of care to be. And you're saying it's inappropriate under Missouri law to find that ordinary care is the standard of care. Right. Ordinary care doesn't, ordinary care is defined by the standard of care. It doesn't establish the standard of care. Okay. That's the distinction I would draw. Now Missouri doesn't have instructions on duty, because traditionally that's a decision made by the court. I'm talking about the negligence. And negligence is set forth, I mean if you look it up, it's MAI 3101 and then also 1702, which is what the judge used for multiple acts of negligence. They definitely require you to set out the facts that the person did, and then say was that a breach. And then the way that you show it's a breach is not by arguing, you argue that there was a standard of care established in the evidence, and then that they failed to meet the standard of care. Counsel, with regard to jury instruction 17, don't we have to look at that in light of the special interrogatory? Because you don't reach 17 until the jury's answered yes to that special interrogatory. Right, and I think that that goes to one of the points I was just talking with Judge Erickson. Missouri law is very clear, I believe, that a assumed fact and a verdict director cannot be cured by a subsequent instruction. And that is Bledsoe is the case we cite for that, 429 Southwest 2nd at 733. I think the chronology is reversed here. It wouldn't be a subsequent instruction. The instruction comes before the interrogatory is answered. Yes, and that's the point. If the verdict director assumes the controverted fact, you can't cure that later. I mean, there's cases that there's a case, for example, that we cite where they argued, you know, essentially what they say is, if you put a disputed fact in the jury instruction, you can't fix that later on. And Bledsoe says, if you have a clear direct assumption of a controverted fact and a verdict directing instruction, we have said this cannot be cured by other instructions properly submitting the issue. And the real problem with the instruction on 17, of course, is the jury had already been told that there's a duty of care, already been told before they answer that that their verdict has to be for the plaintiff. And then that is a special interrogatory. And I think, you know, if you look at Rule 49, you can submit a special interrogatory, but that's part of the verdict form. It's not part of the instructions. And you have to have instructions. So you can't fix a verdict directing instruction under Missouri law that assumes a fact. And so even though the special interrogatory would, in fact, be a true and accurate statement of the law, both as to burden and as to duty and breach, it's insufficient? Yes, absolutely. Because it has just, it's just the legal conclusion from Lopez and what this court did in Lopez. And even if you look at Rule 49 on special interrogatory, Federal Rule of Civil Procedure 49, it specifically says you have to give instructions, tell them how to decide it. And what we had proposed in our alternative to Instruction 17 was the, some definitional things around that. You know, it doesn't mention the word foreseeable. It doesn't say look at orbit of danger. It doesn't talk about, doesn't tell them or give them any guideposts. It's simply a legal conclusion. Do you find this yes or no? In addition, Your Honor, the $30 million punitive damage award is here. I've got another. Certainly. Have you looked at whether there are cases that map out a correct instruction under the restatement of judgments approach to foreseeability and duty? I have not looked at the restatement of judgments on that. Well, let me, then the preliminary question is, under our remand order, could the district court have made the decision that since Lopez didn't address the issue and it hasn't otherwise been addressed, I think the Missouri Supreme Court in this situation would follow the restatement of judgment and leave foreseeability to the retroactive proximate cause inquiry? I don't think that he could have done that in light of Missouri law or even the mandate. What in Missouri law could possibly have prevented that? To say that it's retroactive? I think that... No, no. Foreseeability has two roles, potential roles to play. Certainly. The dominant role is in proximate cause, which is a retroactive inquiry. Right. The more limited or unusual aspect of foreseeability is to tie it into the question of duty. And the restatement of judgments rejected that approach. Right. And left foreseeability to the process that occurs after the court has decided duty as a matter of law. We explained that Lopez did not even consider that and that no Missouri court, appellate court, has considered restatement of judgments. And that it might... And that our dissenting panel member said that might even be the better rule. Why couldn't the district court have decided on remand that forming its proper function under as a diversity judge, I conclude the Supreme Court of Missouri would have chosen to follow the restatement of judgments in this case. I think that that would have been contrary to, for example, the non... the still valid Comish Act case that we cite, which is considered... which foreseeability in the context of duty is not in the light of what happened, not in the exercise of hindsight, not to guard against things that are not likely to happen. I think Lopez looks at it... We didn't leave much of a charm check. Well, I don't think you overruled... I don't think you said that was overruled. Pardon? I said, I don't think that that portion of it was... You said it wasn't controlling. Well, it's not a Supreme Court case. It's a court of appeals decision. It would not be controlling on a federal district judge. I think Lopez, fairly read, talks about looking at it from the defendant's perspective in a forward-looking situation because they talk about, well, what mattered was there was one near miss. You're saying it would have been a bad decision. I think that Missouri always looks at this as the situation at the time that the act happened wasn't foreseeable. And I think Lopez supports that under the duty analysis, not on, you know, approximate cause is different. I don't think... And it's... Yes. I see that my time is up. Would respect a little rebuttal time if possible. Thank you. Mr... Is it Schmieder? Schmieder, yes, Your Honor. Thank you, Your Honor. I'm Rob Schmieder. I have the pleasure of representing Teddy and Melanie Scott. We ask this court to affirm the judgment of the district court. To start, I do want to point out that when this court addressed Coma Shack in the prior opinion, it didn't recognize that it had been superseded. And as Judge Loken just reiterated, this court actually cited two Missouri cases, Alcorn and Street v. Harris, where it did say that those issues of foreseeability were left for the jury. And the only instructions that we know of given in those cases were the general negligence instructions. The ones that talked about the objective standard of what would an ordinary person do under the same or similar circumstances. I'd also like to point out that this court in Brown v. Davis, which is 813 F. 3rd, 1130, had also said that the district court... In that case, the issue of foreseeability was challenged on appeal. And this court said, the district court correctly instructed on general negligence principles. And there was sufficient evidence for the jury to find that William had a legal duty to take appropriate... No, reading generalities, just... I don't know. Well, but in this case, in addition to the general duty instruction... You can start out in your brief and say, we determined a reasonable jury could find emissions circumstances foreseeable. You just flatly misstate our order. We don't make findings. And we weren't considering a trial record. We were taking the summary judgment record and saying, what might happen if the case were fully tried? Then it was fully tried. And you come back and you sell the district court on the notion, well, we... The state circuits already decided duty and foreseeability. So all we have to do is charge them on breach.  Well, I never once told the district court that this court had decided foreseeability. You told us in our brief that we decided it. Well, you decided, it says, you decided a reasonable jury could find that the circumstances of the emissions in this case created some probability or likelihood of harm sufficiently serious that ordinary persons would take precautions to avoid it. But that was in response to their JML argument. The real issue that I see here is if you look at 17, 17 looks like it's directing a verdict if they find a fact, right? And I just don't think that, like, it can't possibly be true that a failure to follow work procedures necessarily violates a duty of ordinary care, right? People enact work procedures all the time that are more stringent and more detailed than what ordinary care may be, right? And yet if you read 17, it says if the defendant, you find the defendant breached his duty by doing, like, failure to follow its procedures. I mean, I can't, I mean, I don't see where that, I mean, that presumes that there's been, that that is in fact a duty.  The district court never instructed on what the duty was beyond just ordinary care, right? And so, I mean, I get what you could argue that says the duty of care is ordinary care. And it would be whether or not a reasonable, prudent person would anticipate the harm, right? And, you know, but that requires some separate finding that just merely failed to follow its work procedures. And, you know, since these things are in the disjunctive, you've got to take every single one of them and read them as though that may be the basis for the decision, right? Correct. There's no doubt about it. But the evidence, as the Supreme Court of Missouri in the Pierce case that we cited in our brief said, what usually is done may be evidence of what ought to be done, but what ought to be done is fixed by that standard of reasonable prudence, whether it usually is complied with or not. And so, the duty is an objective standard of care. And the evidence that came in was the objective standard of care was to follow the safety hierarchy. And the safety hierarchy was to eliminate... Where do we see that? Where do we see the jury told that? The jury was... That's the evidence that came into the jury. The jury would... What was the jury instructed to find? The jury was... I'm sorry. And how... The court has to make the ruling, the ultimate ruling of duty. Correct. Jury has to make a finding of foreseeability as it affects the question of duty. Correct. That was through the special interrogatory. No, it wasn't. That isn't what it said. The judge gave that special interrogatory, which, by the way, was proposed by Diner-Nobel to the court, specifically to test whether those facts existed of foreseeability. And the judge confirmed it... The jury... The verdict, the jury was instructed to decide duty. Did the circumstances create some probability of harm to someone on a neighboring facility sufficiently serious that ordinary persons would take precautions to avoid it? If the district court had said, that's what I conclude the duty is in this case, then the jury could be instructed that. Instead, the jury was instructed to find that. They were asked whether those facts existed. Did those circumstances exist under the test of foreseeability? Without ever being told what the duty was, except implicitly, I guess, if you read that. Well, they were told the duty. The duty defined in negligence, what care an ordinary person would take under the same or similar circumstances, is the same test. Counsel just says that's wrong. Well, I disagree. That's the same exact test. Where did the district court broker that disagreement? Give me the transcript or appendix pages where that difference of opinion was argued and the court ruled as a matter of law, but not a question of defining the duty. I know for a fact that the district court in the post-trial motions pointed back and said, that instruction, which gives the same standard, that's the one that I gave on duty. And the special interrogatory was to test those facts. Because the district court had even talked- The court just said after the fact, well, I did it. No, well, that was the discussion we had beforehand. Because when we had the discussion, when you read the instruction conference- Nobody gives me a sight to the instruction conference where the district court sorted out, in the context of our struggle with defining Missouri law under Lopez, the intertwining of duty and foreseeability and properly parsing out the functions of the court and the jury. And so we get served up with, well, there was sufficient evidence. Doesn't matter how it was done. I can only tell you, I can't cite, there was an instruction conference off record- I don't think the court did it. The court should have, in my view, the court should have considered whether to instruct consistent with the restatement of judgments. Was that argued? That was not argued. What was argued was that the- What was argued- After our opinion carefully said no Missouri court had considered that and it wasn't presented to the Lopez court? The only matters that were argued below were the parties had mutually agreed to submit the special interrogatory and then Dino had offered or tendered an instruction that quite honestly misstated Missouri law on multiple levels and the court said no, that misstates the law. I believe the general negligence instruction with the special interrogatory were proper and that's what the district court did. And this court in the Kostilek case that we cite in our brief pointed out that using a special interrogatory to resolve a whole claim in that case, that involved a vexatious refusal to pay claim against an insurance company and the court simply asked- I thought that site was completely off point. It was a plain air discussion and if anything it helps the defendant. Well, I- You've stated your- That's my response to what you argued. Well, I believe that that's exactly what happened here with the special interrogatory. The special interrogatory defined for- Used the very test of foreseeability- We didn't have a plain- That wasn't a plain air situation here. Well, for it not to be a plain air situation, Dinah would have to prove that it's instruction was proper. It's instruction wasn't proper. It's instruction stated that Missouri- They argued your approach was inconsistent with the remand, right? Correct. Okay. Preserve. Well, to address some of the other issues- Well, wait a minute. Let's not go so- I mean, I know we seem like we've been arguing about this for all day, but let's not go so quickly here because what I'm concerned about is this. Are you in a position at this point, because the court never made a specific determination on a duty of care and instructed the jury on that duty of care and instead, through its instruction in 17, basically listed some possibilities and saying any one of them is a breach of this unknown duty that they haven't fully defined, right? I mean, isn't it true that at this point to defend this verdict, there's just got to be- That if this jury were properly instructed, there would be no other alternative but for them to reach the same verdict that they did. Anyhow- And I guess maybe I'm misunderstanding the question. Maybe I'm misunderstanding. Because the jury was instructed on duty. The court used the MAI 11.07, which talked about care that an ordinarily careful person would use under the same or similar circumstances. That is the required instruction under Missouri law. So that's the duty instruction. Okay. That's a duty instruction, but the jury, he never instructs on- I mean, he's got a directed verdict in 17 where if you find A, B, C, D, or E, that that is a breach of that duty. That's the Missouri approved instruction. That's not a directed verdict instruction. Not in this case, not in this situation. There's never been this situation. It may be in toxic tort cases, fine. But the remand in this case, you can carefully explain, this is not in Missouri law anywhere. But when you have a situation- There's no Missouri instructions- No. On how the jury handles foreseeability to assist the court making its legal duty determination. There is no Missouri approved instruction on that, correct? Right. So there's no approved MAI, and therefore, all this gospel that an approved MAI must be followed does not apply here. Well, I disagree with that because the duty- You may have a point on 1107, but not on 17. 1107 is a backup to 16. Correct. We still have the problem of the instruction on foreseeability, never telling the jury what the duty is, and never defining its foreseeability task. Well, the court did- Other than to say, oh, if you find he violated any procedure, anywhere in the second startup, you can find them liable for negligence. Well, no, that's not true because the- That is true. That's what it says. Well, no. It asked the jury, did the circumstances on this date were- did they create some probability of harm sufficiently serious that ordinary persons would take precautions to do that? That was- The verdict must be for the plaintiffs if you believe first defendant breached its duty of care. I think you're- Counsel, like you're reading from the special interrogatory, and Judge Loken's reading from 17. Don't we have to look at them together as a whole? We do because that's the test. This is a look at the entire charge to that. And if the court would look at, and it's in Section 10A, the court added that breach of- that language breached its duty of care specifically to address the addition of the special interrogatory because that was language that Dino had encouraged the court to add. And this court will know when it reads the instructions conference that I was surprised the next morning when all of a sudden they were objecting to that instruction. I said, well, I thought we had an agreement here because you had added the language they wanted, breached its duty of care by, and then we argued over in the district court said, no, this is the right way to do it. This is how I'm moving forward. But when you do look at the entire charge, the jury had both the special interrogatory, which incorporated the definition or test of foreseeability, but also had the general negligence standard, which is the same objective standard. But that's not what 17 says. 17 says that these are the elements, right? That's what 17 is telling us because it's a jury director. It says the first element is, did the defendant breach their duty of care? And if you find one of those five things, then they breached their duty of care, right? And the second says that if you've done that, you were thereby negligent. I mean, I'm not sure what they mean by that. So if the defendant in any one or more of the respects submitted in the paragraph first was thereby negligent, and third, as a direct result, causation damages, right? And the director says that your verdict must be for the defendant and against the plaintiffs unless you believe the defendant breached its duty of care. And then your argument is essentially that the next clause was negligent, reincorporates the ordinary care instruction, and the jury's going to understand that to be the case. So that's exactly how the Missouri Approved Instructions are designed and have been for decades. Yes, that's exactly how every single case in Missouri is handled. But there is no Missouri MAI on this intertwining of duty and foreseeability. The district court had to make that up. And I believe the court did not abuse its discretion in handling it the way it did. It's de novo on the question of, because duty is an issue of law, this is all de novo in my view. Well, I don't know what else the court could have done that would have been materially different, that would have resulted in a different outcome. Because if all we're talking about is shifting over the test from the special interrogatory, which the jury had, over into an instruction, the outcome would have been the same. It doesn't change anything. Well, not necessarily if it had adopted the brief statement of judgments approach and limited foreseeability to its retroactive role in the proximate cause inquiry. And then made presumably a pre-submission decision on duty based on the evidence. Well, the court found that there was a duty,  to make sure that there were facts supporting foreseeability, which is why the special interrogatory. Which again was- The district court engaged in one of these cases that the Dino relies on McNeil and Halvert and the others on the much more specific definition of duty than just ordinary care. Did the court discuss why those don't apply? No, we did not. Dino didn't raise it. The court, we didn't discuss it. Well, I assume it's implicit or explicit in their proposed instruction, which you say was wrong as a matter of law, presumably because it got into those things. Their proposed instructions did not use the same language mostly as the Missouri approved instructions, except for adding in misstatements of law on, for example, duty is your job, not only for the court. They told that the defendant was to, the foreseeability was to be judged by what the defendant believed or could have been done. No, it's what an ordinary careful person should have done in those circumstances. So again, when you look at the instructions and the entire, which include the special interrogatory and the entire charge, believe that the jury was properly instructed and there would not have been a different outcome under these circumstances. I know I'm less than a minute now. I did want to point out a few things, especially regarding punitive damages, because I don't think that, I think that some of the record, Dino's asking this court to weigh the evidence versus just consider what's before the court that supports the verdict. But when the court looks at what happened and I laid this out in my brief, this wasn't a situation where Dino ran through one stop sign. This was a situation where Dino ran through five or six or seven stop signs. This was reckless indifference. And that's what the jury found and there was clear and convincing evidence of that. I'd also like to point out two other things. They talk about expert Morningstar did not do a forward-looking analysis. That's simply not true. She talked about what a reasonably, what an chemical engineer does, talked about hazard identification, safety hierarchy. And there was evidence of the 40,000 parts per million. I'd just like to refer to the court to 2B, page 76, 3A, page 36, and their own witness 5B, page 43 through 44. I see my time is up. Unless the court has any other questions, we'd ask the court to affirm the judgment. Thank you. Thank you. Did your questions, Judge Loken, on how this might be submitted under the restatement? We do have torts where foreseeability is presented to the jury. And in fact, in the initial Scott opinion, the court cites to them, the Union Pacific case, for example, it's an owner-occupier case. And the owner-occupier cases require that the owner know that there's a dangerous condition there and foresee that it could be dangerous to a passerby. And so if you were looking for some Missouri instructions that under those circumstances would present this to the jury, I think 22 is what I believe it is. But the instructions are actually set out in Alcorn versus Union Pacific. And it might be a means of doing what you're talking about here. But we should make no mistake that that instruction 17, and we agree, and we say in our brief that you can't do MAI under the circumstances, but instruction 17 is not MAI because it injected the assumption of breach of the duty of care. The jury instructions that are normally used don't have that language. And Judge Graz, to your point, I think Missouri law, when you read our cases, and maybe you have already, but if you have a verdict directing instruction that tells you to assume a fact, you can't try to cure that later with something else. Because look at what the jury has already been told at the time they get to that special interrogatory. They've already been told their verdict has to be for the plaintiff if they find facts separate from that, right? They've already been told that we breached a duty. And that interrogatory is asking, you know, essentially the legal conclusion of whether there's a duty. And if you use special interrogatories, Rule 49 says you have to give instructions. You can't just give them a verdict form. You have to give them instructions and talk to them about what facts you could actually find. And Judge Loken, you're completely correct that at the instruction conference and at no point did Judge Autry say, OK, well, I'm finding a duty based on this and I'm going to instruct on this. But we objected repeatedly at 10A, 4 through 7, that there was no tie between any duty and the alleged negligence. Thank you. Thank you, counsel. The case is a complicated case again, and it's been thoroughly brief and well-argued and difficult issues. We'll take it under advisement and do our best with it.